No. 28,277.

JOHN COLLOPY, *Appellee*, v. C. F. FIELD, *Appellant*.

(272 Pac. 99.)

Opinion filed December 8, 1928.

*W. A. Huxman* and *Charles S. Fulton*, both of Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis* and *Warren H. White*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from a judgment rendered upon a directed verdict in favor of the plaintiff for the recovery of a real-estate commission. The particular question involved is whether or not the plaintiff, a real-estate agent, had abandoned his attempts to sell the defendant's farm to the purchaser, and whether the sale consummated later by the owner was the result of a new and independent cause, disconnected with anything the agent had done. The errors alleged are overruling defendant's demurrer to plaintiff's evidence, directing a verdict in favor of plaintiff, and overruling the motion for new trial.

There is no conflict in the testimony in any particular except as to one remark of the plaintiff in conversation with the defendant in the presence of a third party, who corroborates the defendant. The defendant says plaintiff said, in answer to his request or suggestion about seeing the prospective purchaser again, "I will not have anything more to do with the old devil any more." The plaintiff denies this and says he answered by saying he did not think the customer would buy the farm at the price named. The appellant relies upon the answer as stated by him and the third party to constitute an abandonment of efforts to bring about a sale to this customer, which would fully permit the defendant to start new and independent negotiations with him without any liability for commission to the plaintiff. It was not the province of the trial court, nor is it of the reviewing court, to weigh this evidence and determine the conflict; so at this stage of the proceeding we must accept this evidence as the defendant gives it, as it was the duty of the trial court to do when directing a verdict for plaintiff.

There is no question about plaintiff being the one who brought the purchaser and owner together in the first instance. This was in April. The owner's price was $12,000. The purchaser offered $10,000, and the owner dropped to $10,500, when negotiations temporarily ceased. The next day the purchaser notified the agent he wanted to withdraw his offer of $10,000. The purchaser and agent lived in the same town, and the evidence is that the agent frequently thereafter talked with the purchaser about buying this farm, and continued to do so up to the time the plaintiff left his home for Florida in November. The conversation to which the conflicting

testimony relates occurred about the first of October. About the first of December the purchaser went to see the defendant, who was not at home, and the defendant immediately thereafter got his father, who was a real-estate agent, and went to see the purchaser. They consummated the sale for $9,750, including a trade of $500 of property.

Accepting the testimony offered by the defendant where the conflict exists, for the purpose of showing an abandonment by the agent, we must consider it in connection with two other important features in the case which are not contradicted, viz., that the agent did continue to call on the purchaser after that conversation and try to sell him the farm until he left home in November, and the fact that the purchaser went of his own volition about December 1 to see the defendant about renewing negotiations. The first shows that the agent did not in fact abandon the attempt to sell to this customer, even after saying he would not have anything more to do with him, but kept on trying to sell to him until he left home in November. The second shows the renewed negotiations were not new and independent and disconnected with the efforts of the agent in that the customer, without any suggestion from the defendant or anyone else, went to the defendant's home for the purpose of trying to buy the farm. These facts confute the theory of abandonment and overturn the statement of the agent which indicated abandonment. It is fair to conclude that after saying he would have nothing more to do with the customer the plaintiff changed his mind and continued talking to him and his wife about buying this farm. Under these circumstances there was no abandonment.

"As to what constitutes an abandonment on the part of a broker, it should be observed that the mere fact that some time elapses after the broker has discontinued his efforts to make a sale, before the sale is made in fact by the owner, is not evidence of itself that there has been a complete abandonment of the negotiations." (4 R. C. L. 318.)

"After a broker has found a customer and commenced negotiations, neither the principal nor the customer can break them off and defeat the broker's right to a commission by concluding the transaction without his aid." (9 C. J. 619.)

Even if there was an abandonment, under these authorities it would not be sufficient to relieve the defendant of the liability for commission unless the renewed negotiations were entirely new and independent and wholly disconnected with the earlier negotiations, which in this case is confronted with the fact that the customer vol-

untarily renewed the negotiations himself and no one was ever responsible for his being interested in this deal up to that time except the plaintiff.

"Where a prospective purchaser of real estate, who has been solicited to buy it by a broker having a nonexclusive agency for its sale, definitely decides not to do so, the owner is not liable for a commission, although shortly afterward, acting in good faith, he sells it to the same person through independent negotiations set on foot by one who is not a real-estate agent and who neither receives nor asks compensation for his services, having an indirect interest in the sale being effected." (*Corse v. Kelly,* 80 Kan. 115, syl., 101 Pac. 1016.)

In the case cited the customer decided not to purchase the farm, but a few days later purchased a stock of hardware, putting up a cash forfeit. Within the time to complete the purchase of the hardware he told the owner of the hardware stock that he was dissatisfied and would let the forfeit go. The owner of the hardware induced the buyer to see the farm owner and endeavor to exchange the hardware stock for the farm. This he did without the help of the agent. This was held to be a new and independent cause. The same principle is declared in the opinion of *Soper v. Deal,* 103 Kan. 522, 175 Pac. 396, requiring the sale to be "made as the result of a new and independent cause disconnected with anything the plaintiff had done, operating after the efforts of the plaintiff to make a sale had failed and spent their force." The facts in this case show conclusively that the plaintiff was the primary, procuring and proximate cause of the sale as ultimately consummated by the owner and entitled to the commission.

"Where property is placed in the hands of several brokers for sale, the owner is bound to pay the broker who is the primary, proximate and procuring cause of the sale, although the sale is consummated by another broker on different terms." (*Beougher v. Clark,* 81 Kan. 250, syl. ¶ 2, 106 Pac. 39.)

"If a real-estate agent, under a contract with the owner, call the attention of a prospective buyer to the land of such owner, and thereafter, moved by the efforts of such agent, the proposing buyer and the owner consummate the purchase and sale of such real estate, the agent is entitled to his commission, even though the purchaser, at the time the agent solicited him to buy, was not ready, willing and able to purchase." (*Marlatt v. Elliott,* 69 Kan. 477, syl. ¶ 2, 77 Pac. 104. See, also, *Plant v. Thompson,* 42 Kan. 664, 22 Pac. 726; *Sandefur v. Hines,* 69 Kan. 168, 76 Pac. 444; *Grimes v. Emery,* 94 Kan. 701, 146 Pac. 1135.)

It is further urged by appellant that the agency of the plaintiff was necessarily limited to a reasonable time, and that the period from April to December is an unreasonable time without some re-

sults. This depends upon circumstances. What would appear unreasonable at one time might be quite reasonable at other times. The evidence shows the defendant did not consider the agency terminated about October 1 when he talked with the agent; neither did he at that time so inform the agent. We find no error in overruling the demurrer of the defendant to the evidence of the plaintiff, nor in directing a verdict for the plaintiff.

The judgment is affirmed.